FRANKLIN | SOTO LLP
Joshua D. Franklin, SBN 264536
Cheryl Dunn Soto, SBN 250892
444 West C Street, Suite 300
San Diego, California 92101
619.872.2520
josh@franklinsoto.law
cheryl@franklinsoto.law

*Attorneys for Defendants Shaya Medical P.C. Inc.
and Wissam Shaya, M.D.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| BALBOA CAPITAL CORPORATION, a California Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SHAYA MEDICAL P.C. INC., a Florida corporation; WISSAM SHAYA, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants.<br><br>—————————————————<br><br>SHAYA MEDICAL P.C. INC., a Florida corporation and WISSAM SHAYA, M.D., an individual,<br><br>Counterclaimants,<br><br>vs. | Case No. 8:21-cv-00831<br><br>**ANSWER AND COUNTERCLAIM FOR:**<br><br>1. **Unfair Competition (B&P Code section 17200, et seq.)**<br>2. **Fraud**<br>3. **Rescission**<br>4. **Declaratory Judgment**<br><br><br>**Demand for Jury Trial** |

BALBOA CAPITAL CORPORATION, a California Corporation; CYNOSURE, LLC, f/k/a Cynosure, Inc., a limited liability company,

Counter-defendants.

Defendants SHAYA MEDICAL P.C. INC., and WISSAM SHAYA, M.D. (collectively, the "SHAYA PARTIES" or "DEFENDANTS"), appearing by and through their counsel of record, answer the complaint of BALBOA CAPITAL CORPORATION ("BALBOA CAPITAL" or "PLAINTIFF") as follows and deny every allegation not given a specific response below:

## PRELIMINARY ALLEGATIONS

1.     Answering paragraph 1, the SHAYA PARTIES admit the allegations.

2.     Answering paragraph 2, the SHAYA PARTIES admit the allegations.

3.     Answering paragraph 3, the SHAYA PARTIES admit the allegations.

4.     Answering paragraph 4, the SHAYA PARTIES admit the allegations.

5.     Answering Paragraph 5, the SHAYA PARTIES are without sufficient knowledge or information to form a belief as to the truth of the allegations of that paragraph and, on that basis, deny each and every one of those allegations.

6.     Answering Paragraph 6, the SHAYA PARTIES are without sufficient knowledge or information to form a belief as to the truth of the allegations of that paragraph and, on that basis, deny each and every one of those allegations.

7.     Answering Paragraph 7, the SHAYA PARTIES are without sufficient knowledge or information to form a belief as to the truth of the allegations of that paragraph and, on that basis, deny each and every one of those allegations.

8.     Answering paragraph 8, the SHAYA PARTIES admit the obligations sued upon are commercial in nature.  The remainder of the paragraph is a statement

of law to which no response is required but, in any event, the remaining allegations are denied.

9.    Answering paragraph 9, the referenced document speaks for itself.  The SHAYA PARTIES deny the referenced document contains a paragraph 25 and deny all other allegations of paragraph 9.

## FIRST CAUSE OF ACTION

(Breach of Equipment Financing Agreement Against SHAYA MEDICAL)

10.    Answering paragraph 10, the SHAYA PARTIES reincorporate their responses to paragraphs 1-9.

11.    Answering paragraph 11, the SHAYA PARTIES admit receipt of a document purporting to be executed by Balboa Capital on October 14, 2019, bearing number 306705-000, and referencing monthly payments.  The remaining allegations set forth in paragraph 11 state legal conclusions to which no response is required.  To the extent a response is required to the remaining allegations in paragraph 11, such allegations are denied.

12.    Answering paragraph 12, the SHAYA PARTIES are without sufficient knowledge or information to form a belief as to the truth of the allegations in the first sentence and, on that basis, deny those allegations.  As for the remainder of the paragraph, the SHAYA PARTIES deny that payments are due and owing to BALBOA CAPITAL due to, among other things, BALBOA CAPITAL's fraudulent inducement, the SHAYA PARTIES' mistake of fact, BALBOA CAPITAL's exertion of undue influence, and the unconscionability of any and all contractual provisions PLAINTIFF is attempting to enforce.

13.    Answering paragraph 13, the SHAYA PARTIES admit BALBOA CAPITAL emailed an Acceleration Demand Letter demanding immediate payment of $241,264.22 from WISSAM SHAYA, who was erroneously identified as "LESSEE." The SHAYA PARTIES deny the remainder of the allegations in this paragraph.

14.     Answering paragraph 14, the EFA speaks for itself.  The SHAYA PARTIES deny any late charges are due and owing and deny the remaining allegations of this paragraph.

15.     Answering paragraph 15, the SHAYA PARTIES are without sufficient knowledge or information to form a belief as to the truth of the allegations in the first sentence and, on that basis, deny those allegations.

16.     Answering paragraph 16, the SHAYA PARTIES deny the allegations.

17.     Answering paragraph 17, the SHAYA PARTIES deny the allegations.

## SECOND CAUSE OF ACTION

18.     Answering paragraph 18, the SHAYA PARTIES reincorporate their responses to paragraphs 1-17.

19.     Answering paragraph 19, admit the EFA is a document containing terms that speak for themselves.  The remaining allegations set forth in paragraph 19 state legal conclusions to which no response is required.  To the extent a response is required to the remaining allegations in paragraph 19, such allegations are denied.

20.     Answering paragraph 20, the SHAYA PARTIES admit BALBOA CAPITAL demanded "return of the Equipment."  The remaining allegations set forth in paragraph 20 state legal conclusions to which no response is required.  To the extent a response is required to the remaining allegations in paragraph 20, such allegations are denied.

21.     Answering paragraph 21, the SHAYA PARTIES deny the allegations.

## THIRD CAUSE OF ACTION

(Breach of Guaranty against Defendant SHAYS)

22.     Answering paragraph 22, the SHAYA PARTIES reincorporate their responses to paragraphs 1-21.

23.     Answering paragraph 23, the SHAYA PARTIES admit DR. SHAYA signed a document purporting to be a guaranty, the terms of which speak for

1  themselves, and admit BALBOA CAPITAL attaches a document as Exhibit "1" that

2  appears to be a copy of the guaranty.  The remainder of the allegations are denied.

3      24.     Answering paragraph 24, the SHAYA PARTIES deny there has been a

4  default and deny that payments are due and owing to BALBOA CAPITAL due to,

5  among other things, BALBOA CAPITAL's fraudulent inducement, the SHAYA

6  PARTIES' mistake of fact, BALBOA CAPITAL's exertion of undue influence, and

7  the unconscionability of any and all contractual provisions PLAINTIFF is attempting

8  to enforce.  The SHAYA PARTIES admit BALBOA CAPITAL emailed an

9  Acceleration Demand Letter demanding immediate payment of $241,264.22 from

10 WISSAM SHAYA, who was identified as "PERSONAL GUARANTOR."

11     25.     Answering paragraph 25, the SHAYA PARTIES deny the allegations.

12     26.     Answering paragraph 26, the SHAYA PARTIES state the terms of the

13 Guaranty speak for themselves.  The remaining allegations set forth in paragraph 26

14 state legal conclusions to which no response is required.  To the extent a response is

15 required to the remaining allegations in paragraph 26, such allegations are denied.

16 The SHAYA parties further deny BALBOA CAPITAL is entitled to an award of

17 attorney's fees.

18                    **FOURTH CAUSE OF ACTION**

19                 **(Indebtedness Against All Defendants)**

20     27.     Answering paragraph 27, the SHAYA PARTIES reincorporate their

21 responses to paragraphs 1-26.

22     28.     Answering paragraph 28, the SHAYA PARTIES deny the allegations.

23                    **AFFIRMATIVE DEFENSES**

24                    **First Affirmative Defense**

25                    (Failure to State a Claim)

26     One or more causes of action in CICA's Complaint fail to state facts sufficient

27 to constitute a cause of action under California law.

28

1                               **Second Affirmative Defense**

2                 (Insufficiency of Process – Defect in Summons)

3 WISSAM SHAYA, M.D. was not properly served with a summons directed to him.

4                               **Third Affirmative Defense**

5                         (Improper Venue)

6         The SHAYA PARTIES are citizens of Florida, and the complaint seeks to

7 enforce against these Florida citizens an agreement entered into in Florida and

8 involving a Florida financing transaction for the purchase of goods to be delivered in

9 Florida.  Any forum selection clause that may otherwise govern the venue in this

10 action is unreasonable and fundamentally unfair, was not reasonably communicated

11 to the SHAYA PARTIES prior to them signing any agreement with said clause, and

12 was obtained as the result of fraud.  Accordingly, such clause is unconscionable and

13 unenforceable.  Furthermore, the agreements themselves are unconscionable and

14 subject to rescission such that any forum selection clause contained therein is also

15 unenforceable.  Thus, there is no applicable, enforceable forum selection clause that

16 would make venue proper in the Central District of California.

17                             **Fourth Affirmative Defense**

18                      (Inconvenient Forum)

19         The SHAYA PARTIES are citizens of Florida, and the complaint seeks to

20 enforce against these Florida citizens an agreement entered into in Florida and

21 involving a Florida financing transaction for the purchase of goods to be delivered in

22 Florida.  The bulk of the witnesses in this case are located in Florida.  The Court

23 should transfer this case to Florida for the convenience of the parties and the

24 witnesses and in the interest of justice.

25 / / /

26 / / /

27 / / /

28 / / /

**Fifth Affirmative Defense**

(Failure to Join Indispensable Party)

This case should be dismissed because BALBOA CAPITAL has not and cannot join a party without which the Court cannot accord complete relief among existing parties.

**Sixth Affirmative Defense**

(Unilateral Mistake of Material Fact)

No contract was created because the SHAYA PARTIES were mistaken in believing that (1) the SculpSure device would be well-tolerated by the SHAYA PARTIES' patients and impose minimal pain; (2) the accompanying marketing campaign would be effective and result in the referral of multiple patients per month; (3) the machine would "pay for itself," i.e., it would generate sufficient revenue to cover the payments on the machine; and (4) the machine would generate additional, much-needed revenue.  BALBOA CAPITAL knew the SHAYA PARIES were mistaken regarding these material facts and used that mistake to take advantage of the SHAYA PARTIES and to cause them to sign the EFA and Guaranty.  The SHAYA PARTIES' mistake was not caused by their excessive carelessness, and the SHAYA PARTIES would not have agreed to enter into the contract if they had known about such mistakes.

**Seventh Affirmative Defense**

(Undue Influence)

No contract was created because BALBOA CAPITAL used the SHAYA PARTIES' financial needs and financial distress to induce or pressure them into consenting to the EFA and Guaranty, and the SHAYA PARTIES would not have otherwise have consented.

/ / /

/ / /

/ / /

**Eighth Affirmative Defense**

(Fraud)

No contract was created because BALBOA CAPITAL obtained the SHAYA PARTIES' consent by fraud.  BALBOA CAPITAL represented that (1) the SculpSure device would be well-tolerated by the SHAYA PARTIES' patients and impose minimal pain; (2) the accompanying marketing campaign would be effective and result in the referral of multiple patients per month; (3) the machine would "pay for itself," i.e., it would generate sufficient revenue to cover the payments on the machine; and (4) the machine would generate additional, much-needed revenue. BALBOA CAPITAL knew that these representations of material fact were not true. BALBOA CAPITAL made the representations to persuade the SHAYA PARTIES to sign the EFA and Guaranty.  The SHAYA PARTIES reasonably relied on BALBOA CAPITAL's representations and would not have signed those contracts if they had known these representations were not true.

**Ninth Affirmative Defense**

(Contract of Adhesion)

The EFA and accompanying Guaranty are standardized contracts drafted by BALBOA CAPITAL, a party of superior bargaining strength, and relegate to the weaker, adhering parties, i.e., the SHAYA PARTIES, only the opportunity to adhere to them or reject them.  The SHAYA PARTIES only executed the EFA and Guaranty after DR. SHAYA was relentlessly pursued and subjected to high-pressure tactics and fraudulent representations employed to convince him to sign the agreements. Although DR. SHAYA was provided with a copy of the EFA and Guaranty prior to signing, he was unable to actually read them before signing due to the extremely small font in which they are printed.  The terms of the EFA and Guaranty do not fall within the reasonable expectations of the weaker, adhering parties, i.e., the SHAYA PARTIES, and, to enforce them as a whole, or to enforce certain terms contained therein, would work on the SHAYA PARTIES an overly harsh and unduly oppressive

1   result.  Accordingly, the EFA and Guaranty are contracts of adhesion that the Court

2   should not enforce.

### Tenth Affirmative Defense

(Unconscionability – Common Law)

5       The EFA and accompanying Guaranty are standardized contracts which are

6   largely illegible due to the extremely small font in which they are printed.  The EFA

7   was drafted by BALBOA CAPITAL, a party of superior bargaining strength, and

8   relegates to the weaker, adhering parties, i.e., the SHAYA PARTIES, only the

9   opportunity to adhere to them or reject them.  They are, therefore, contracts of

10  adhesion.  The SHAYA PARTIES only executed the EFA and Guaranty after DR.

11  SHAYA was relentlessly pursued and subjected to high-pressure tactics and

12  fraudulent representations and promises employed to convince him to sign the

13  agreements.  Although DR. SHAYA was provided with a copy of the EFA and

14  Guaranty prior to signing, he was unable to actually read them before signing due to

15  the extremely small font in which they are printed.

16      Because he could not read them, little did DR. SHAYA know at the time that

17  the terms of the EFA and Guaranty are overly harsh and unduly oppressive and

18  inconsistent with California law.  For example, the EFA states (1) BALBOA

19  CAPITAL may, in its sole discretion, charge up to thirty (30) days of "Prorated Rent"

20  (even though the EFA is not a lease agreement) and such Prorated Rent is not credited

21  against amounts owed as set forth in the payment schedule; (2) "[p]ayments may be

22  adjusted upward or downward by up to 10% to reflect actual costs" but no mention is

23  made of what "costs" would warrant such an adjustment; (3) BALBOA CAPITAL

24  may impose an origination fee and termination fee in unspecified amounts; and

25  (4) BALBOA CAPITAL may impose additional taxes and/or fees, including an

26  invoice fee, the amounts of which are unspecified, and such fees may not only cover

27  BALBOA CAPITAL's costs "but may also include a profit."  While giving BALBOA

28  CAPITAL carte blanche to impose additional charges, taxes and fees without any

limitation, the EFA, inter alia, (1) purports to waive all of the Debtor's defenses and counterclaims; and (2) states that, upon default, BALBOA CAPITAL is, inter alia, entitled to attorney's fees "whether or not litigation is commenced" and "any actual or anticipated loss of federal or state tax benefits to Creditor (as determined by Creditor) resulting from Debtor's default."   Furthermore, the EFA and Guaranty do not state the amount financed or the interest rate being charged.  Their terms do not fall within the reasonable expectations of the weaker, adhering parties, i.e., the SHAYA PARTIES, and to enforce the contract or certain of its terms would work on the SHAYA parties an overly harsh and unduly oppressive result.  In light of the foregoing, the EFA and Guaranty are both procedurally and substantively unconscionable and are unenforceable in whole or in part.

### Eleventh Affirmative Defense

(Unconscionability - Cal. Civ. Code Section 1670.5)

The EFA and accompanying Guaranty are standardized contracts which are largely illegible due to the extremely small font in which they are printed.  The EFA was drafted by BALBOA CAPITAL, a party of superior bargaining strength, and relegates to the weaker, adhering parties, i.e., the SHAYA PARTIES, only the opportunity to adhere to them or reject them.  They are, therefore, contracts of adhesion.  The SHAYA PARTIES only executed the EFA and Guaranty after DR. SHAYA was relentlessly pursued and subjected to high-pressure tactics and fraudulent representations and promises employed to convince him to sign the agreements.  Although DR. SHAYA was provided with a copy of the EFA and Guaranty prior to signing, he was unable to actually read them before signing due to the extremely small font in which they are printed.

Because he could not read them, little did DR. SHAYA know at the time that the terms of the EFA and Guaranty are overly harsh and unduly oppressive and inconsistent with California law.  For example, the EFA states (1) BALBOA CAPITAL may, in its sole discretion, charge up to thirty (30) days of "Prorated Rent"

---

(even though the EFA is not a lease agreement) and such Prorated Rent is not credited against amounts owed as set forth in the payment schedule; (2) "[p]ayments may be adjusted upward or downward by up to 10% to reflect actual costs" but no mention is made of what "costs" would warrant such an adjustment; (3) BALBOA CAPITAL may impose an origination fee and termination fee in unspecified amounts; and (4) BALBOA CAPITAL may impose additional taxes and/or fees, including an invoice fee, the amounts of which are unspecified, and such fees may not only cover BALBOA CAPITAL's costs "but may also include a profit." While giving BALBOA CAPITAL carte blanche to impose additional charges, taxes and fees without any limitation, the EFA, inter alia, (1) purports to waive all of the Debtor's defenses and counterclaims; and (2) states that, upon default, BALBOA CAPITAL, is inter alia, entitled to attorney's fees "whether or not litigation is commenced" and "any actual or anticipated loss of federal or state tax benefits to Creditor (as determined by Creditor) resulting from Debtor's default." Furthermore, the EFA and Guaranty do not state the amount financed or the interest rate being charged. The terms of the contract do not fall within the reasonable expectations of the weaker, adhering parties, i.e., the SHAYA PARTIES, and to enforce the contract or certain of its terms would work on the SHAYA parties an overly harsh and unduly oppressive result. Accordingly, the EFA and Guaranty were unconscionable at the time they were made and, therefore, the Court should refuse to enforce them, in whole or in part, under Cal. Civ. Code Section 1670.5.

### Twelfth Affirmative Defense

#### (Invalidity of EFA Excuses Guaranty Obligation)

DR. WISSAM SHAYA is excused from performing under the Guaranty because, for reasons alleged above, the underlying EFA is unconscionable and, therefore, unenforceable.

/ / /

/ / /

### Thirteenth Affirmative Defense

#### (Failure to Mitigate)

Although the SHAYA PARTIES deny they are liable to BALBOA CAPITAL for any reason and deny that BALBOA CAPITAL suffered any damages whatsoever, the SHAYA PARTIES allege, alternatively, that if BALBOA CAPITAL suffered any damages as a result of any act and/or omission of the SHAYA PARTIES, such damages could and should have been mitigated by reasonable efforts on the part of BALBOA CAPITAL.  Due to BALBOA CAPTAL's failure to take reasonable steps to prosecute and/or defend its interests, including immediately collecting and liquidating the subject collateral in order to eliminate or reduce any alleged indebtedness, its damages have been exacerbated wholly due to its own fault and that of its agents, employees and attorneys, and therefore it is barred from obtaining recovery from the SHAYA PARTIES for any such damages.

### Fourteenth Affirmative Defense

#### (Set-off)

Although the SHAYA PARTIES deny they are liable to BALBOA CAPITAL for any reason and deny that BALBOA CAPITAL suffered any damages whatsoever, the SHAYA PARTIES allege, alternatively, that if an indebtedness is found to be due and owed, then that indebtedness should be eliminated or substantially reduced because the SHAYA PARTIES are entitled to set-off or recoupment against BALBOA CAPITAL.

### Fifteenth Affirmative Defense

#### (Reservation of Right to Assert Additional Defenses)

The SHAYA PARTIES presently have insufficient knowledge or information upon which to form a belief as to whether they may have additional, as yet unstated, affirmative defenses available.  Therefore, they reserve their rights to assert additional affirmative defenses in the event discovery indicates they would be applicable.

/ / /

**PRAYER**

Having fully answered the Complaint, DEFNDANTS pray as follows:

1.      That PLAINTIFF BALBOA CAPITAL take nothing by way of this action and that judgment be rendered in favor of DEFENDANTS;

2.      That DEFENDANTS be awarded their costs of suit incurred in their defense;

3.      That DEFENDANTS be awarded their reasonable attorney's fees incurred in connection with this action, pursuant to Cal. Civil Code § 1717(a).

4.      For such other relief as the Court deems proper.

Date: May 12, 2021

FRANKLIN | SOTO LLP


By: /s/ Cheryl Dunn Soto
     Joshua D. Franklin
     Cheryl Dunn Soto


*Attorneys for Defendants Shaya Medical P.C. Inc. and Wissam Shaya, M.D.*


**COUNTERCLAIM**

**THE PARTIES**

1.      Counterclaimant WISSAM SHAYA, M.D. ("DR. SHAYA") is a physician who is, and was at the time of the filing of the complaint, domiciled in the State of Florida and, therefore, is deemed a citizen of the State of Florida.

2.      Counterclaimant SHAYA MEDICAL P.C. INC. ("SHAYA MEDICAL") is, and was at the time of the filing of the complaint, a Florida corporation with its principal place of business in Jacksonville, Florida, and, therefore, is deemed a citizen of the State of Florida.  SHAYA MEDICAL is the

1  professional corporation owned by DR. SHAYA and through which DR. SHAYA

2  practices medicine.  Dr. SHAYA and SHAYA MEDICAL are collectively referred to

3  herein as the "SHAYA PARTIES" or "COUNTERCLAIMANTS."

4        3.      Counter-defendant BALBOA CAPITAL CORPORATION ("BALBOA

5  CAPITAL") is, and was at the time of the filing of the complaint, a California

6  corporation with its principal place of business located in the City of Costa Mesa,

7  County of Orange, State of California, and, therefore, is deemed a citizen of the State

8  of California.

9        4.      Counter-defendant CYNOSURE, LLC, f/k/a Cynosure, Inc.

10  ("CYNOSURE"), is the manufacturer of the SculpSure device, a laser device

11  designed to treat fat deposits in the body.  On information and believe, Defendant

12  Cynosure is a limited liability company whose sole member is Lotus Buyer, Inc., a

13  corporation that is incorporated and has its principal offices in Delaware.  For

14  purposes of determining diversity jurisdiction, a limited liability company is a citizen

15  of every state of which its owners/members are citizens.  *See Johnson v. Columbia*

16  *Properties Anchorage, LP*, 437 F.3d 894, 902 (9th Cir. 2006).  And corporations are

17  citizens of the states in which they are incorporated and where they have their

18  principal place of business.  *See* 28 U.S.C. § 1332(c).  Cynosure is, accordingly, a

19  citizen of Delaware.

20        5.      On information and belief, COUNTER-DEFENDANTS were at all

21  times joint venturers and agents, servants, representatives, and/or associates of one

22  another and, in doing the things hereinafter alleged, were acting within the scope of

23  their authority as such, with the permission, knowledge, and consent of the other.

## JURISDICTION

25        6.      The Court has supplemental jurisdiction over this compulsory

26  counterclaim.  *See* 28 U.S.C. § 1367(a).

27        7.      Additionally, because COUNTERCLAIMANTS are citizens of the State

28  of Florida and COUNTER-DEFENDANTS are citizens of the States of California

1 | and Delaware, there is complete diversity of citizenship under 28 U.S.C.

2 | § 1332(a)(1), and the requirement of diversity is satisfied.

3 |      8.    Furthermore, the amount in controversy exceeds the sum of seventy-five

4 | thousand dollars ($75,000.00), exclusive of interest and costs, because the cross-

5 | complaint seeks, inter alia, rescission of a contract wherein the value of the object of

6 | the contract is more than $200,000.00.

7 |      9.    Therefore, the Court has original jurisdiction over this counterclaim

8 | pursuant to 28 U.S.C. § 1332.

9 |      10.    BALBOA CAPITAL is a California corporation with its principal place

10 | of business in California and has initiated litigation in this district.  Therefore, the

11 | Court has personal jurisdiction over BALBOA CAPITAL.

12 |      11.    On information and belief, the Court has personal jurisdiction over

13 | CYNOSURE because it conducts extensive business in California, including

14 | extensive business with BALBOA CAPITAL in this district in connection with

15 | securing financing for its customers in order to facilitate the purchase of

16 | CYNOSURE's medical equipment across the country, including the device that is the

17 | subject collateral in this case.  Accordingly, CYNOSURE purposefully availed itself

18 | of the jurisdiction of this Court.

19 | **GENERAL ALLEGATIONS**

20 |      12.    Dr. SHAYA is a physician licensed to practice medicine in the State of

21 | Florida.  DR. SHAYA's medical practice, SHAYA MEDICAL, is located in

22 | Jacksonville, Florida.  DR. SHAYA is a family practitioner who, like so many other

23 | family practitioners these days, has struggled to keep open the doors of his practice.

24 |      13.    In late July or early August of 2019, DR. SHAYA and SHAYA

25 | MEDICAL were first contacted by individuals who sought to sell them a

26 | CYNOSURE SculpSure device, which is a laser device designed to treat fat deposits

27 | in the body that sells for approximately $200,000.  Over the course of the next few

28 |

weeks, DR. SHAYA was relentlessly pursued and subjected to high-pressure sales tactics in an attempt to get him to purchase the device.

14.     DR. SHAYA was visited at SHAYA MEDICAL by at least five individuals on at least five different occasions.  Sometimes these individuals would appear at SHAYA MEDICAL unannounced, and other times they would call to say they were in town and would be stopping by at noon that day, when they knew DR. SHAYA was likely to be available.

15.     One individual in particular, Kristopher Huston, was intent on closing the sale and came to SHAYA MEDICAL to meet with DR. SHAYA on more than one occasion, with the last occasion being August 23, 2019.

16.     On information and belief, Kristopher Huston, as well as the other individuals who contacted DR. SHAYA about purchasing the SculpSure device, were agents, employees, and/or representatives of both CYNOSURE and BALBOA CAPITAL, and their statements to DR. SHAYA are properly imputed to, and binding upon, both entities.

17.     Furthermore, on information and belief, Kristopher Huston, and possibly the other individuals, received compensation, whether in the form of a commission or otherwise, from both entities in connection with the SHAYA PARTIES' purchase and financing of the SculpSure device.

18.     Prior to agreeing to purchase the SculpSure device, DR. SHAYA, on behalf of himself and SHAYA MEDICAL, repeatedly expressed to Kristopher Huston and the others that, because he is a family practitioner and not a plastic surgeon or a physician with an aesthetics practice, he was concerned that an aesthetics device like the SculpSure device was not appropriate for his family practice and would not work in such a practice.

19.     In response, Kristopher Huston and the others represented to DR. SHAYA that the SculpSure device would work in DR. SHAYA's family practice and would produce much-needed revenue.  They represented that the marketing

1  campaign, which was included in the purchase and which involved online marketing,

2  open houses, social media, and other methods of attracting patients who would want a

3  SculpSure treatment, would be effective.  And they represented to DR. SHAYA that

4  his clients would be satisfied with their results and would refer others, which would

5  also generate revenue.  Kristopher Huston made such promises and representations to

6  DR. SHAY on, inter alia, August 23, 2019.

7      20.    DR. SHAYA, on behalf of himself and SHAYA MEDICAL, also

8  repeatedly expressed concerns about SHAYA MEDICAL's financial condition and

9  stated that he and SHAYA MEDICAL could not afford the SculpSure device.

10      21.    In response, Kristopher Huston and the others represented to DR.

11  SHAYA that SHAYA MEDICAL's financial condition was all the more reason why

12  SHAYA MEDICAL should purchase the SculpSure device, because not only would

13  the device pay for itself but it would generate the additional revenue SHAYA

14  MEDICAL needed.  Kristopher Huston made such promises and representations to

15  DR. SHAYA on, inter alia, August 23, 2019.

16      22.    In addition to repeatedly expressing the above concerns, DR. SHAYA,

17  on behalf of himself and SHAYA MEDICAL, inquired as to how much pain his

18  patients would experience with a SculpSure treatment and asked whether he could try

19  out the machine prior to purchasing.  He was told that it was not an option for him to

20  try out the machine prior to purchasing but that the treatment would be painless.

21  Kristopher Huston made such promise and representations to DR. SHAYA on, inter

22  alia, August 23, 2019.

23      23.    Finally, on August 23, 2019, in response to DR. SHAYA's reiteration of

24  the above-referenced concerns regarding a purchase of the SculpSure device, DR.

25  SHAYA was told by Kristopher Huston that there "was not a shred of doubt" that the

26  SculpSure device would be successful in DR. SHAYA's practice.  Kristopher Huston

27  also told DR. SHAYA "we have the financing covered" and presented DR. SHAYA

28  with BALBOA CAPITAL's Equipment Financing Agreement ("EFA") and

accompanying Guaranty as the way in which the SHAYA PARTIES would pay for the SculpSure device.  When DR. SHAYA told Kristopher Huston that he could not read the EFA, which is printed in extremely small font, Kristopher Huston's response was "trust me."  Because DR. SHAYA could not read the fine print, the SHAYA PARTIES were unaware that the EFA and Guaranty do not state the amount financed or the interest rate being charged and were also unaware of the extremely onerous nature of the terms of those documents.

24.     The foregoing promises and representations of material fact made to DR. SHAYA including, inter alia, representations that (1) the SculpSure device would be well-tolerated by the SHAYA PARTIES' patients and impose minimal pain; (2) the accompanying marketing campaign would be effective and result in the referral of multiple patients per month; (3) the machine would "pay for itself," i.e., it would generate sufficient revenue to cover the payments on the machine; and (4) the machine would generate additional, much-needed revenue – were intended to induce DR. SHAYA and SHAYA MEDICAL to agree to purchase and finance the SculpSure device.

25.     BALBOA CAPITAL and CYNOSURE, by and through their agents, employees, and/or representatives, induced the SHAYA PARTIES to purchase and finance the SculpSure device while knowing the promises and representations made to the SHAYA PARTIES were, in fact, false.

26.     Based on such promises and representations, the SHAYA PARTIES agreed to purchase the SculpSure device, marketing campaign, and a treatment package and to finance it through BALBOA CAPITAL.  Accordingly, DR. SHAYA simultaneously executed the CYNOSURE Customer Purchase Agreement, and the BALBOA CAPITAL EFA on SHAYA MEDICAL's behalf.  DR. SHAYA also executed the accompanying Guaranty.

27.     The SHAYA PARTIES justifiably relied upon the promises and representations made to them, which promises and representations induced the

1  SHAYA PARTIES to purchase the SculpSure device and to finance the purchase

2  with BALBOA.

3      28.    But the SHAYA PARTIES soon discovered the promises and

4  representations made to them were untrue.

5      29.    In fact, the CYNOSURE marketing campaign was ineffective, and the

6  SculpSure device did not generate the much needed revenue that was promised.  In

7  fact, the device did not even pay for itself, i.e., did not cover the monthly payments,

8  despite DR. SHAYA doing everything CYNOSURE asked him to do in terms of

9  marketing.

10     30.    In order to ensure he was taking full advantage of the marketing

11 opportunities offered by CYNOSURE, DR. SHAYA even paid to attend a

12 CYNOSURE seminar in Las Vegas that amounted to little more than a sales pitch.

13 At the conference, a spokesperson for Cynosure, who did not realize DR. SHAYA

14 already owned the SculpSure device, warned him against purchasing the device and

15 told DR. SHAYA he himself owned the device but it sat unused in his basement.

16     31.    Furthermore, to DR. SHAYA's dismay, his patients complained about

17 the intense pain they experienced during the treatment.  In fact, after testing the

18 machine on himself and his staff and experiencing the pain firsthand, DR. SHAYA

19 invested in a nitrous machine in an attempt to alleviate the 25 minutes of extreme

20 discomfort he understood his patients to be suffering.  DR. SHAYA's patients also

21 complained about their results and, needless to say, they did not refer other patients to

22 DR. SHAYA as he had been told would happen.

23     32.    Finally, although DR. SHAYA was told that few physicians in town

24 would have the SculpSure device, he has since discovered the device was sold to

25 numerous physicians and medical practices in his immediate area.  Several of them

26 have since confided in DR. SHAYA that they are similarly unable to make their

27 payments despite the promises that were made to them about the revenue the device

28

1  would generate, at least one of them has gone out of business, and one has declared

2  bankruptcy.

3      33.    On March 19, 2021, BALBOA CAPITAL issued an Acceleration

4  Demand Letter stating it was "hereby accelerating and declaring immediately due and

5  payable the entire unpaid balance of the Agreement together with all other

6  obligations" and demanded $241,254.22 within 3 business days in addition to return

7  of the equipment.

8      <u>BALBOA CAPITAL's Violation of the California Financing Law</u>

9      34.    BALBOA CAPITAL is a finance lender within the meaning of Cal. Fin.

10 Code section 22009.

11     35.    Unbeknownst to the SHAYA PARTIES at the time, BALBOA

12 CAPITAL has approximately 33 Customer Reviews on the Better Business Bureau

13 ("BBB") website, and each of them is a one-star (out of five stars) review.

14     36.    BALBOA CAPITAL loaned money to SHAYA MEDICAL in order to

15 purchase the SculpSure device for use in a medical practice.  Thus, the proceeds were

16 intended to be used for other than personal, family or household purposes such that

17 the loan transaction embodied in the EFA meets the definition of "commercial loan"

18 under Cal. Fin. Code section 22502.

19     37.    Kristopher Huston and/or CYNOSURE introduced the SHAYA

20 PARTIES to BALBOA CAPITAL and/or delivered to BALBOA CAPITAL the

21 SHAYA PARTIES' contact information within the meaning of Cal. Fin. Code

22 Section 22602(g).

23     38.    On information and belief, Kristopher Huston and/or CYNOSURE never

24 performed underwriting and never obtained documentation to ensure SHAYA

25 MEDICAL would have sufficient monthly gross revenue with which to repay the

26 loan pursuant to the loan terms and, therefore, made the loan even though SHAYA

27 MEDICAL's total monthly expenses, including debt service payments on the loan,

28 would exceed its monthly gross revenue.

39.     Additionally, because SHAYA MEDICAL is a corporation and the loan was to be secured by a personal guaranty provided by DR. SHAYA, the owner of the corporation, a credit report from at least one consumer credit reporting agency was supposed to be considered before the loan was made.  *See* Cal. Fin. Code § 22602(3)(B).  But, on information and belief, no such report was considered.

40.     On information and belief, at that time, neither Kristopher Huston nor CYNOSURE was licensed pursuant to Division 9 of the California Financial Code.

41.     On information and belief, Kristopher Huston and/or CYNOSURE received compensation, whether in the form of a commission or other compensation, from BALBOA CAPITAL in connection with the referral of the SHAYA PARTIES to BALBOA CAPITAL despite lack of compliance with Cal. Fin. Code Section 22602(a)(3)(B).

42.     Because, on information and belief, Kristopher Huston and/or CYNOSURE were unlicensed and failed to perform underwriting and obtain the necessary documentation, it was a violation of Cal. Fin. Code section 22602(a) for BALBOA CAPITAL to compensate them.

43.     Because, on information and belief, BALBOA CAPITAL paid compensation to Kristopher Huston and/or CYNOSURE, unlicensed parties under Division 9 of the California Financial Code, in connection with the referral of the SHAYA PARTIES, BALBOA CAPITAL is liable for all misrepresentations made to the SHAYA PARTIES in connection with that loan pursuant to Cal. Fin. Code section 22602(b).

### FIRST CLAIM FOR RELIEF

**(Unfair Competition in Violation of**

**Business and Professions Code section 17200, et seq.)**

(As to BALBOA CAPITAL)

44.     Paragraphs 1 through 43, above, are realleged and incorporated here by reference, as though fully set forth herein.

45.     Business and Professions Code section 17200, et seq. (the Unfair Competition Law or UCL) prohibits, inter alia, any unlawful, unfair, or fraudulent business acts or practices.  BALBOA CAPITAL has engaged in the following unlawful, unfair, or fraudulent business acts or practices:

**Cal. Fin. Code Section 22161**

46.     Cal. Fin. Code section 22161, which is part of the California Financing Law, forbids lenders from, inter alia, (1) making a materially false or misleading statement or representation to a borrower about the terms or conditions of that borrower's loan, when making or brokering the loan; (2) causing or permitting to be printed, displayed, published, distributed, or broadcast in any manner, any statement or representation with regard to the business subject to the provisions of this division, including the rates, terms, or conditions for making or negotiating loans, that is false, misleading, or deceptive, or that omits material information that is necessary to make the statements not false, misleading, or deceptive; (3) knowingly misrepresenting, circumventing, or concealing, through subterfuge or device, any material aspect or information regarding a transaction to which the person is a party; and (4) committing an act that constitutes fraud or dishonest dealings.

47.     As alleged herein, BALBOA CAPITAL, a finance lender, has violated Cal. Fin. Code section 22161.

**Cal. Fin. Code Sections 22602(a) and 22603**

48.     Cal. Fin. Code section 22602(a) provides that unlicensed persons may be compensated by a finance lender for referring a borrower to the licensee only when various conditions are met.

49.     On information and belief, Kristopher Huston and CYNOSURE are unlicensed for purposes of section 22602.

50.     Despite being unlicensed, Kristopher Huston and CYNOSURE engaged in the following activities in violation of Cal. Fin. Code section 22602(c): (1) counseling or advising the borrower about the loan; (2) contacting the licensee on

1  behalf of the borrower other than to refer the borrower; (3) gathering loan

2  documentation from the borrower or delivering the documentation to the licensee;

3  (4) communicating lending decisions or inquiries to the borrower; (5) obtaining the

4  borrower's signature on documents.

5      51.    As alleged herein, on information and belief, BALBOA CAPITAL, a

6  finance lender, paid commissions to such unlicensed persons, in violation of section

7  22602(a)(3)(B).

8      52.    Furthermore, BALBOA CAPITAL never provided a written statement to

9  the SHAYA PARTIES regarding the referral, in violation of Cal. Fin. Code section

10  22603.

11  **<u>Cal. Fin. Code Section 22802(b)</u>**

12      53.    Cal. Fin. Code section 22802 requires a lender to disclose to a loan

13  recipient at the time of extending a specific commercial financing offer to that

14  recipient, and to obtain the recipient's signature on such a disclosure before

15  consummating the commercial financing transaction, inter alia: (1) the total amount

16  of funds provided; (2) the total dollar cost of the financing; (3) a description of pre-

17  payment policies; (4) and the total cost of the financing expressed as an annualized

18  rate.

19      54.    As alleged herein, BALBOA CAPITAL, a lender, violated Section 22802(b)

20  by failing to disclose, inter alia, (1) the total amount of funds provided; (2) the total

21  dollar cost of the financing; (3) a description of pre-payment policies; (4) and the total

22  cost of the financing expressed as an annualized rate.

23      55.    As a result of BALBOA CAPITAL's many acts that are unlawful,

24  deceptive, and/or otherwise unfair, as specified above, the SHAYA PARTIES have

25  been injured and are, therefore, entitled to an order for all available relief, including

26  restitution and injunctive relief, as appropriate.

27  / / /

28  / / /

## SECOND CLAIM FOR RELIEF

### Fraud

### (As to BALBOA CAPITAL and CYNOSURE)

56.     Paragraphs 1 through 55, above, are realleged and incorporated here by reference, as though fully set forth herein.

57.     BALBOA CAPITAL and CYNOSURE misrepresented or concealed material facts to the SHAYA PARTIES when they represented, inter alia, that (1) the SculpSure device would not cause any pain to patients; (2) the SculpSure device would provide satisfactory results, which would lead to referrals from satisfied patients; (3) the marketing campaign that was purchased was effective and would be effective for the SHAYA PARTIES; (4) the machine would "pay for itself," i.e., it would generate sufficient revenue to cover the payments on the machine; and (5) the machine would generate additional, much-needed revenue.  On information and belief, such representations, which involved a matter peculiarly within the knowledge of BALBOA CAPITAL and CYNOSURE, were intended as representations of fact. And, in fact, such representations were accepted by the SHAYA PARTIES as representations of fact because they were peculiarly within the knowledge of BALBOA CAPITAL and CYNOSURE.

58.     But such representations were false.  The SculpSure device causes significant pain during the course of a treatment and, on information and belief, produces minimal results, thereby leading to unhappy and unsatisfied patients. Therefore, despite the marketing campaign offered by CNYOSURE, the device does not generate the significant revenue needed to cover the cost of financing the device, let alone additional revenue.

59.     On information and belief, by August 2019, COUNTER-DEFENDANTS knew such representations of material fact were false when made or made the representations recklessly and without regard for their truth.  Specifically, COUNTER-DEFENDANTS had received feedback prior to August 2019 that the

SculpSure device was not painless as the result of, inter alia, physician complaints and expert testimony in at least one lawsuit regarding the device.  And COUNTER-DEFENDANTS knew the device would not pay for itself because BALBOA CAPITAL had already filed multiple lawsuits against physicians who, it was alleged, had defaulted under Equipment Financing Agreements entered into for the purpose of financing the purchase of SculpSure devices.  The fact that multiple physicians defaulted under identical Equipment Financing Agreements apprised BALBOA CAPITAL and CYNOSURE that such physicians were not realizing significant additional revenue from the SculpSure device and, in fact, that the device was not "paying for itself."  In light of COUNTER-DEFENDANTS' multiple disputes with other physicians and knowledge that multiple physicians had defaulted under identical Equipment Financing Agreements, neither BALBOA CAPITAL nor CYNOSURE believed at the time of their representations to the SHAYA PARTIES that the SculpSure device would generate additional revenue for the SHAYA PARTIES or pay for itself.

60.     BALBOA CAPITAL and CYNOSURE misrepresented or concealed such material facts with an intent to induce reliance by the SHAYA PARTIES.

61.     The SHAYA PARTIES reasonably and justifiably relied on COUNTER-DEFENDANTS' misrepresentations or concealment of material facts.

62.     The SHAYA PARTIES were harmed, and their reliance on COUNTER-DEFENDANTs' representations was a substantial factor in causing such harm.

### THIRD CLAIM FOR RELIEF

### (Rescission)

(As to BALBOA CAPITAL)

63.     Paragraphs 1 through 62, above, are realleged and incorporated here by reference, as though fully set forth herein.

64.     The SHAYA PARTIES are entitled to rescission of the BALBOA CAPITAL EFA and Guaranty because their consent was given as the result of a

mutual mistake of material fact and/or obtained through fraud, duress, and/or undue influence exercised by, or with the connivance of, BALBOA CAPITAL.

65.     As a direct result of BALBOA's acts, the SHAYA PARTIES have incurred actual damages, which they are entitled to recover.

## FOURTH CLAIM FOR RELIEF

### (Rescission)

### (As to CYNOSURE)

66.     Paragraphs 1 through 62, above, are realleged and incorporated here by reference, as though fully set forth herein.

67.     The SHAYA PARTIES are entitled to rescission of the CYNOSURE Customer Purchase Agreement because their consent was given as the result of a mutual mistake of material fact and/or obtained through fraud, duress, and/or undue influence exercised by, or with the connivance of, CYNOSURE.

68.     As a direct result of CYNOSURE's acts, the SHAYA PARTIES have incurred actual damages, which they are entitled to recover.

## FIFTH CLAIM FOR RELIEF

### Declaratory Relief

### (As to BALBOA CAPITAL)

69.     Paragraphs 1 through 62, above, are realleged and incorporated here by reference, as though fully set forth herein.

70.     An actual controversy has arising and now exists between the SHAYA PARTIES and BALBOA CAPITAL concerning the enforceability of the EFA and, in particularly, its unconscionability.  The SHAYA PARTIES assert that the EFA, in whole or in part, is unconscionable.  On information and belief, it is BALBOA CAPITAL's position that the EFA is not unconscionable in whole or in part.

71.     The SHAYA PARTIES seek a declaration that the EFA is unconscionable in whole or in part.

72.   A declaratory judgment is necessary to resolve the controversy between the SHAYA PARTIES and BALBOA CAPITAL regarding the unconscionability of the EFA.

73.   The requested relief will resolve the controversy between the parties.

## JURY TRIAL DEMAND

74.   The SHAYA PARTIES demand trial by jury on all triable issues.

## PRAYER

WHEREFORE, counter-claimants demand judgment against Balboa Capital Corporation as follows:

1.   For general, compensatory, and consequential damages;

2.   For reasonable attorney fees pursuant to Cal. Civil Code § 1717(a);

3.   For interest at the highest legal rate commencing from the earliest date allowed by law;

4.   For costs of suit; and

5.   For such other and further relief as the Court deems just and proper, together with costs and disbursements of this action.

Dated:        May 12, 2021              Respectfully submitted,


FRANKLIN | SOTO LLP


/s/ Cheryl Dunn Soto
Joshua D. Franklin
Cheryl Dunn Soto

*Attorneys for Defendants and Counterclaimants Shaya Medical P.C. Inc. and Wissam Shaya, M.D.*