FRANKLIN | SOTO LLP
Joshua D. Franklin, SBN 264536
Cheryl Dunn Soto, SBN 250892
444 West C Street, Suite 300
San Diego, California 92101
619.872.2520
josh@franklinsoto.law
cheryl@franklinsoto.law

*Attorneys for Defendants Shaya Medical P.C. Inc.*
*and Wissam Shaya, M.D.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| BALBOA CAPITAL CORPORATION, a California Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SHAYA MEDICAL P.C. INC., a Florida corporation; WISSAM SHAYA, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants.<br>──────────────────<br>SHAYA MEDICAL P.C. INC., a Florida corporation and WISSAM SHAYA, M.D., an individual,<br><br>Counterclaimants,<br><br>vs. | Case No. 8:21-cv-00831-CJC-JDE<br><br>**FIRST AMENDED COUNTERCLAIM FOR:**<br><br>1. **Unfair Competition (B&P Code section 17200, et seq.)**<br>2. **Fraud**<br>3. **Rescission**<br>4. **Declaratory Judgment**<br><br>Honorable Cormac J. Carney<br><br>**Demand for Jury Trial** |

BALBOA CAPITAL CORPORATION, a California Corporation; CYNOSURE, LLC, f/k/a Cynosure, Inc., a limited liability company,

Counter-defendants.

## **THE PARTIES**

1.     Counterclaimant WISSAM SHAYA, M.D. ("DR. SHAYA") is a physician who is, and was at the time of the filing of the complaint, domiciled in the State of Florida and, therefore, is deemed a citizen of the State of Florida.

2.     Counterclaimant SHAYA MEDICAL P.C. INC. ("SHAYA MEDICAL") is, and was at the time of the filing of the complaint, a Florida corporation with its principal place of business in Jacksonville, Florida, and, therefore, is deemed a citizen of the State of Florida.  SHAYA MEDICAL is the professional corporation owned by DR. SHAYA and through which DR. SHAYA practices medicine.  Dr. SHAYA and SHAYA MEDICAL are collectively referred to herein as the "SHAYA PARTIES" or "COUNTERCLAIMANTS."

3.     Counter-defendant BALBOA CAPITAL CORPORATION ("BALBOA CAPITAL") is, and was at all relevant times, a California corporation with its principal place of business located in the City of Costa Mesa, County of Orange, State of California, and, therefore, is deemed a citizen of the State of California.

4.     Counter-defendant CYNOSURE, LLC, f/k/a Cynosure, Inc. ("CYNOSURE"), is the manufacturer of the SculpSure device, a laser device designed to treat fat deposits in the body.  On information and belief, Defendant Cynosure is a limited liability company whose sole member is Lotus Buyer, Inc., a corporation that is incorporated and has its principal offices in Delaware.  For purposes of determining diversity jurisdiction, a limited liability company is a citizen

of every state of which its owners/members are citizens. *See Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 902 (9th Cir. 2006). And corporations are citizens of the states in which they are incorporated and where they have their principal place of business. *See* 28 U.S.C. § 1332(c). CYNOSURE is, accordingly, a citizen of Delaware.

5. CYNOSURE is not named as a third-party defendant. Rather, it is properly named as a counter-defendant pursuant to Rule 19 of the Federal Rules of Civil Procedure in that it is subject to service of process, its joinder will not deprive the court of subject-matter jurisdiction, and, in CYNOSURE's absence, the Court cannot accord complete relief among existing parties.

6. In the alternative, CYNOSURE is properly named as a counter-defendant pursuant to Rule 20 of the Federal Rules of Civil Procedure in that the SHAYA PARTIES assert rights to relief against CYNOSURE and BALBOA jointly and/or severally and assert rights to relief against them with respect to and arising out of the same transaction and occurrence or series of transactions or occurrences and, furthermore, there are questions of law or fact common to CYNOSURE and BALBOA CAPITAL that will arise in this action.

7. On information and belief, COUNTER-DEFENDANTS were at all times joint venturers who agreed to jointly undertake a business enterprise for profit, which enterprise was operated in and from California and involved the sale and financing of CYNOSURE's medical devices, including but not limited to the SculpSure device, through a course of conduct involving high-pressure sales tactics designed to fraudulently induce physicians and their medical practices to purchase and finance a CYNOSURE device which COUNTER-DEFENDANTS knew the physicians could not afford, and through carefully crafted separate purchase and finance agreements with provisions, including conflicting forum selection provisions, intended to thwart any attempt by the physicians and medical practices to challenge the business enterprise's fraudulent conduct, and COUNTER-DEFENDANTS did so

operate said business enterprise jointly.  On information and belief, under this joint venture, CYNOSURE would profit due to the sale of a device it could not otherwise sell, and BALBOA CAPITAL would profit from receiving significant interest on the money it loaned or, in the event of default, from obtaining significant personal judgments against the physicians who guaranteed repayment.  On information and belief, in doing the things herein alleged, BALBOA CAPITAL and CYNOSURE were acting within the scope of this joint venture, and, thus, the actions of one are properly imputed to the other, and each joint venturer is liable for the actions of the other.

8.     Alternatively, on information and belief, COUNTER-DEFENDANTS, together with their respective agents, representatives and employees, were agents, servants, representatives, and/or associates of one another and, in doing the things herein alleged, were acting within the scope of their authority as such, with the permission, knowledge, and consent of the other.

## SUBJECT MATTER  JURISDICTION

9.     The Court has supplemental jurisdiction over this compulsory counterclaim.  *See* 28 U.S.C. § 1367(a).

10.     Additionally, because COUNTERCLAIMANTS are citizens of the State of Florida and COUNTER-DEFENDANTS are citizens of the States of California and Delaware, there is complete diversity of citizenship under 28 U.S.C. § 1332(a)(1), and the requirement of complete diversity is satisfied.

11.     Furthermore, the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, because the cross-complaint seeks, inter alia, rescission of a contract wherein the value of the object of the contract is more than $200,000.00.

12.     Therefore, the Court has original jurisdiction over this counterclaim pursuant to 28 U.S.C. § 1332.

. . .

# **PERSONAL JURISDICTION**

13.    BALBOA CAPITAL is a California corporation with its principal place of business in California and has initiated litigation in this district.  Therefore, the Court has personal jurisdiction over BALBOA CAPITAL.

14.    CYNOSURE is registered with the California Secretary of State and has designated an agent for service of process.

15.    CYNOSURE routinely and extensively conducts business in California, including marketing, selling, and training purchasers of devices throughout California.  CYNOSURE conducts such business through employees located throughout the State of California and, on information and belief, CYNOSURE has one or more offices in California where such employees work.

16.    CYNOSURE's website, which is aimed at, inter alia, California residents and which allows California residents to search for CYNOSURE providers/practitioners in California, reflects there are 721 CYNOSURE providers/practitioners within 50 miles of BALBOA CAPITAL's zip code (92626) alone.

17.    Additionally, CYNOSURE's website currently reflects that it is advertising for (1) a Territory Manager in Los Angeles, California, a role that "is responsible for lead generation and sales working with the District Manager to sell Cynosure's entire bag of innovative technologies and exceed territory sales objectives"; (2) a Territory Manager in Orange County, California, a role that "is responsible for lead generation and sales working with the District Manager to sell Cynosure's entire bag of innovative technologies and exceed territory sales objectives"; (3) an Area Sales Manager in San Francisco, California, a role that "is responsible for lead generation and sales working with the District Manager to sell Cynosure's entire bag of innovative technologies and exceed territory sales objectives"; (4) a District Sales Manager in San Francisco, a role that "is responsible for leading and inspiring the local team to sell Cynosure's entire bag of innovative

technologies to exceed sales objectives; and (5) a Clinical Education Specialist in Southern California, a "field-based role responsible for training customers on the safe and effective use of Cynosure devices."  Attached hereto as Exhibit A are true and correct copies of internet job postings that were accessed through CYNOSURE's website (https://www.cynosure.com/about-us/careers/) by clicking the "See Our Current Openings" button.

18.    Furthermore, on information and belief, CYNOSURE conducts extensive business with BALBOA CAPITAL in California in connection with securing financing for its customers in order to facilitate the purchase of CYNOSURE's medical equipment and devices in California and across the country, including the device that is the subject collateral in this case.

19.    Additionally, on information and belief and as more fully alleged in paragraph 7, above, CYNOSURE's business with BALBOA in California is conducted as part of a joint venture conducted in and from California.

20.    CYNOSURE's contacts and affiliations with the State of California as alleged in paragraphs 7 and 14 through 19, above, are so substantial, continuous, and systematic as to approximate physical presence in California, and to render CYNOSURE essentially at home in California, so that the Court may properly exercise general personal jurisdiction over CYNOSURE.

21.    In light of CYNOSURE's contacts and affiliations with the State of California as alleged in paragraphs 7 and 14 through 19, above, CYNOSURE has purposefully availed itself of the privilege of conducting activities in California. Furthermore, the claims asserted by the SHAYA PARTIES against CYNOSURE arise out of and relate to such forum-related activities.  The exercise of jurisdiction over CYNOSURE is reasonable under the circumstances.  Thus, the maintenance of this suit against CYNOSURE will not offend, and in fact comports with, traditional notions of fair play and substantial justice, and the Court may properly exercise specific personal jurisdiction over CYNOSURE.

## **GENERAL ALLEGATIONS**

22.    Dr. SHAYA is a physician licensed to practice medicine in the State of Florida.  DR. SHAYA's medical practice, SHAYA MEDICAL, is located in Jacksonville, Florida.  DR. SHAYA is a family practitioner who, like so many other family practitioners these days, has struggled to keep open the doors of his practice.

23.    BALBOA CAPITAL is California Finance Lender, with License No. 6032159.  Unbeknownst to the SHAYA PARTIES at the time they signed the agreements that are the subject of this action, each year, BALBOA CAPITAL brings hundreds, if not thousands, of lawsuits in California for breach of equipment financing agreements.  It has approximately 33 Customer Reviews on the Better Business Bureau ("BBB") website, and each of them is a one-star (out of five stars) review.

24.    In late July or early August of 2019, DR. SHAYA and SHAYA MEDICAL were first contacted by individuals who sought to sell them a CYNOSURE SculpSure device, which is a laser device designed to treat fat deposits in the body that sells for approximately $200,000.  Over the course of the next few weeks, DR. SHAYA was relentlessly pursued and subjected to high-pressure sales tactics in an attempt to get him to purchase the device.

25.    DR. SHAYA was visited at SHAYA MEDICAL by at least five individuals on at least five different occasions.  Sometimes these individuals would appear at SHAYA MEDICAL unannounced, and other times they would call to say they were in town and would be stopping by at noon that day, when they knew DR. SHAYA was likely to be available.

26.    One individual in particular, Kristopher Huston, was intent on closing the sale and came to SHAYA MEDICAL to meet with DR. SHAYA on more than one occasion, with the last occasion being August 23, 2019.

27.    Kristopher Huston and the other individuals who contacted DR. SHAYA about purchasing the SculpSure device were employees of CYNOSURE.  On

1  information and belief, BALBOA CAPITAL had sufficient control over Kristopher

2  Huston that he was also an agent of BALBOA CAPITAL, and/or his statements can

3  be imputed to, and are binding on, BALBOA CAPITAL because they were made in

4  the scope and course of the joint venture alleged in detail in paragraph 7, above.

5      28.    Furthermore, on information and belief, Kristopher Huston, and possibly

6  the other individuals, received compensation, whether in the form of a commission or

7  otherwise, from both CYNOSURE and BALBOA CAPITAL in connection with the

8  SHAYA PARTIES' purchase and financing of the SculpSure device.

9      29.    Prior to agreeing to purchase the SculpSure device, DR. SHAYA, on

10  behalf of himself and SHAYA MEDICAL, repeatedly expressed to Kristopher

11  Huston and the others that, because he is a family practitioner and not a plastic

12  surgeon or a physician with an aesthetics practice, he was concerned that an

13  aesthetics device like the SculpSure device was not appropriate for his family practice

14  and would not work in such a practice.

15      30.    In response, Kristopher Huston and the others represented to DR.

16  SHAYA that the SculpSure device would work in DR. SHAYA's family practice and

17  would produce much-needed revenue.  They represented that the marketing

18  campaign, which was included in the purchase and which involved online marketing,

19  open houses, social media, and other methods of attracting patients who would want a

20  SculpSure treatment, would be effective.  And they represented to DR. SHAYA that

21  his clients would be satisfied with their results and would refer others, which would

22  also generate revenue.  Kristopher Huston made such promises and representations to

23  DR. SHAY on, inter alia, August 23, 2019.

24      31.    DR. SHAYA, on behalf of himself and SHAYA MEDICAL, also

25  repeatedly expressed concerns about SHAYA MEDICAL's financial condition and

26  stated that he and SHAYA MEDICAL could not afford the SculpSure device.

27      32.    In response, Kristopher Huston and the others represented to DR.

28  SHAYA that SHAYA MEDICAL's financial condition was all the more reason why

---

SHAYA MEDICAL should purchase the SculpSure device, because not only would the device pay for itself, but it would generate the additional revenue SHAYA MEDICAL needed.  Kristopher Huston made such promises and representations to DR. SHAYA on, inter alia, August 23, 2019.

33.     In addition to repeatedly expressing the above concerns, DR. SHAYA, on behalf of himself and SHAYA MEDICAL, inquired as to how much pain his patients would experience with a SculpSure treatment and asked whether he could try out the machine prior to purchasing.  He was told that it was not an option for him to try out the machine prior to purchasing but that the treatment would be painless. Kristopher Huston made such promise and representations to DR. SHAYA on, inter alia, August 23, 2019.

34.     Finally, on August 23, 2019, in response to DR. SHAYA's reiteration of the above-referenced concerns regarding a purchase of the SculpSure device, DR. SHAYA was told by Kristopher Huston that there "was not a shred of doubt" that the SculpSure device would be successful in DR. SHAYA's practice.  Kristopher Huston also told DR. SHAYA "we have the financing covered" and presented DR. SHAYA with BALBOA CAPITAL's Equipment Financing Agreement ("EFA") and accompanying Guaranty as the way in which the SHAYA PARTIES would pay for the SculpSure device.  When DR. SHAYA told Kristopher Huston that he could not read the EFA, which is printed in extremely small font, Kristopher Huston's response was "trust me."  Because DR. SHAYA could not read the fine print and lacked a reasonable opportunity to learn its terms, the SHAYA PARTIES were unaware that, inter alia, the EFA and Guaranty do not state the total amount of funds provided, the total dollar cost of the financing, or the total cost of the financing expressed as an annualized rate, and THE SHAYA PARTIES were also unaware of the extremely onerous and unconscionable nature of their terms.

35.     The foregoing promises and representations of material fact made to DR. SHAYA, including, inter alia, representations that (1) the SculpSure device would be

1  well-tolerated by the SHAYA PARTIES' patients; (2) the SculpSure treatment would

2  be painless; (3) the accompanying marketing campaign would be effective and result

3  in the referral of multiple patients per month; (4) the machine would "pay for itself,"

4  i.e., it would generate sufficient revenue to cover the payments on the machine; and

5  (5) the machine would generate additional, much-needed revenue, were intended to

6  induce DR. SHAYA and SHAYA MEDICAL to agree to purchase and finance the

7  SculpSure device.

8      36.    BALBOA CAPITAL and CYNOSURE, by and through their agents,

9  employees, and/or representatives and, on information and belief, in accordance with

10  and pursuant to their joint venture, induced the SHAYA PARTIES to purchase and

11  finance the SculpSure device while knowing the promises and representations of

12  material fact made to the SHAYA PARTIES were, in fact, false.

13      37.    Based on such promises and representations, the SHAYA PARTIES

14  agreed to purchase the SculpSure device, marketing campaign, and a treatment

15  package and to finance it through BALBOA CAPITAL.  Accordingly, DR. SHAYA

16  simultaneously executed the CYNOSURE Customer Purchase Agreement, and the

17  BALBOA CAPITAL EFA on SHAYA MEDICAL's behalf.  DR. SHAYA also

18  executed the accompanying Guaranty.  Attached to the Complaint as Exhibit B is a

19  true and correct copy of the EFA and Guaranty, without the referenced attachment.

20      38.    The SHAYA PARTIES justifiably relied upon the promises and

21  representations of material fact made to them, which promises and representations

22  induced the SHAYA PARTIES to purchase the SculpSure device and to finance the

23  purchase with BALBOA.

24      39.    But the SHAYA PARTIES soon discovered the promises and

25  representations of material fact made to them were untrue.

26      40.    In fact, the CYNOSURE marketing campaign was ineffective, and the

27  SculpSure device did not generate the much needed revenue that was promised.  In

28  fact, the device did not even pay for itself, i.e., did not cover the monthly payments,

despite DR. SHAYA doing everything CYNOSURE asked him to do in terms of
marketing.

41.    In order to ensure he was taking full advantage of the marketing
opportunities offered by CYNOSURE, DR. SHAYA even paid to attend a
CYNOSURE seminar in Las Vegas that amounted to little more than a sales pitch.
At the conference, a spokesperson for CYNOSURE, who did not realize DR.
SHAYA already owned the SculpSure device, warned him against purchasing the
device and told DR. SHAYA he himself owned the device but it sat unused in his
basement.

42.    Furthermore, to DR. SHAYA's dismay, his patients complained about
the intense pain they experienced during the treatment.  In fact, after testing the
machine on himself and his staff and experiencing the pain firsthand, DR. SHAYA
invested in a nitrous machine in an attempt to alleviate the 25 minutes of extreme
discomfort he understood his patients to be suffering.  DR. SHAYA's patients also
complained about their results and, needless to say, they did not refer other patients to
DR. SHAYA as he had been told would happen.

43.    Finally, although DR. SHAYA was told that few physicians in town
would have the SculpSure device, he has since discovered the device was sold to
numerous physicians and medical practices in his immediate area.  Several of them
have since confided in DR. SHAYA that they are similarly unable to make their
payments despite the promises and representations that were made to them about the
revenue the device would generate, at least one of them has gone out of business, and
one has declared bankruptcy.

44.    On March 19, 2021, BALBOA CAPITAL issued an Acceleration
Demand Letter stating it was "hereby accelerating and declaring immediately due and
payable the entire unpaid balance of the Agreement together with all other
obligations" and demanded $241,254.22 within 3 business days in addition to return
of the equipment.

# FIRST CLAIM FOR RELIEF

## (Unfair Competition in Violation of

## Business and Professions Code section 17200, et seq.)

(As to BALBOA CAPITAL)

45.     Paragraphs 1 through 44, above, are realleged and incorporated here by reference, as though fully set forth herein.

46.     BALBOA CAPITAL is a finance lender and licensee within the meaning of the California Financial Code sections cited herein.

47.     BALBOA CAPITAL loaned money to SHAYA MEDICAL in order to purchase the SculpSure device for use in a medical practice.  Thus, the proceeds were intended to be used for other than personal, family or household purposes such that the loan transaction embodied in the EFA meets the definition of "commercial loan" under Cal. Fin. Code section 22502.

48.     Business and Professions Code section 17200, et seq. (the Unfair Competition Law or UCL) prohibits, inter alia, any unlawful, unfair, or fraudulent business acts or practices.  BALBOA CAPITAL has engaged in the following unlawful, unfair, or fraudulent business acts or practices:

## Cal. Fin. Code Section 22602(a)

49.     Cal. Fin. Code section 22602(a) provides that unlicensed persons may be compensated by a licensee that is a finance lender for "referring" a borrower to the licensee, i.e., for either introducing the borrower and the finance lender or delivering to the finance lender the borrower's contact information, only if the loan is consummated and, inter alia, only if, before approving the loan, the licensee (1) "[o]btains documentation from the prospective borrower documenting the borrower's commercial status" and (2) "[p]erforms underwriting and obtains documentation to ensure that the prospective borrower will have sufficient monthly gross revenue with which to repay the loan pursuant to the loan terms, and does not make a loan if it determines through its underwriting that the prospective borrower's

total monthly expenses, including debt service payments on the loan for which the prospective borrower is being considered, will exceed the prospective borrower's monthly gross revenue." CAL. FIN. CODE § 22602(a)(3)(A),(B).  Additionally, "[i]f the prospective borrower is a sole proprietor or a corporation and the loan will be secured by a personal guarantee provided by the owner of the corporation, a credit report from at least one consumer credit reporting agency that compiles and maintains files on consumers on a nationwide basis shall also be considered."  CAL. FIN. CODE § 22602(a)(3)(B).

50.    For purposes of section 22602, BALBOA CAPITAL is a licensee that is a finance lender.

51.    On information and belief, Kristopher Huston and/or CYNOSURE referred the SHAYA PARTIES to BALBOA CAPITAL within the meaning of Cal. Fin. Code section 22602(g).  That referral led to the consummation of a commercial loan as defined in section 22502, between BALBOA CAPITAL and SHAYA MEDICAL.  And, on information and belief, Kristopher Huston and CYNOSURE are unlicensed for purposes of section 22602 and received compensation, whether in the form of a commission or other compensation, from BALBOA CAPITAL in connection with the referral of the SHAYA PARTIES to BALBOA CAPITAL

52.    On information and belief, prior to approving the loan and paying compensation for the referral, BALBOA CAPITAL (1) failed to obtain documentation from SHAYA MEDICAL documenting its commercial status; and (2) failed to performed underwriting and obtain documentation to ensure SHAYA MEDICAL would have sufficient monthly gross revenue with which to repay the loan pursuant to the loan terms.

53.    Additionally, because SHAYA MEDICAL is a corporation and the loan was to be secured by a personal guaranty provided by DR. SHAYA, the owner of the corporation, a credit report from at least one consumer credit reporting agency was supposed to be considered before the loan was made.  *See* CAL. FIN. CODE

1  § 22602(3)(B).  But, on information and belief, no such report was considered by

2  BALBOA CAPITAL before it made the loan.

3      54.    Had BALBOA CAPITAL complied with sections 22602(a)(3)(A) and

4  (B) and obtained the required documentation and performed the necessary

5  underwriting, it would have known that SHAYA MEDICAL would not have

6  sufficient monthly gross revenue with which to repay the loan pursuant to the loan

7  terms because its total monthly expenses, including debt service payments on the

8  loan, would exceed SHAYA MEDICAL's monthly gross revenue and, accordingly,

9  in accordance with the directive of section 22602(a)(3)(B), BALBOA CAPITAL

10 would not have made the loan to SHAYA MEDICAL.

11     55.    But it did make the loan and, on information and belief, BALBOA

12 CAPITAL paid compensation to such unlicensed persons for the referral of the

13 SHAYA PARTIES.  Because BALBOA CAPITAL did not comply with sections

14 22602(a)(3)(A) and (B) before approving the loan, BALBOA CAPITAL violated

15 section 22602(a) by paying such compensation.

16     56.    Furthermore, because, on information and belief, BALBOA CAPITAL

17 paid compensation to Kristopher Huston and/or CYNOSURE, unlicensed parties

18 under Division 9 of the California Financial Code, in connection with the referral of

19 the SHAYA PARTIES, BALBOA CAPITAL is, pursuant to Cal. Fin. Code section

20 22602(b), statutorily liable for the misrepresentati ons made to the SHAYA

21 PARTIES by Kristopher Huston and/or CYNOSURE in connection with that loan.

22 **Cal. Fin. Code Section 22603**

23     57.    California Financial Code section 22603 provides that "[a] licensee that

24 is a finance lender shall provide a prospective borrower who has been referred by an

25 unlicensed person the following written statement, in 10-point font or larger, at the

26 time the licensee receives an application for a commercial loan, and shall require the

27 prospective borrower to acknowledge receipt of the statement in writing:

28

"You have been referred to us by [Name of Unlicensed Person]. If you are approved for the loan, we may pay a fee to [Name of Unlicensed Person] for the successful referral. [Licensee], and not [Name of Unlicensed Person] is the sole party authorized to offer a loan to you. You should ensure that you understand any loan offer we may extend to you before agreeing to the loan terms. If you wish to report a complaint about this loan transaction, you may contact the Department of Business Oversight at 1-866-ASK-CORP (1-866-275-2677), or file your complaint online at www.dbo.ca.gov."

58.    BALBOA CAPITAL is a licensee that is a finance lender.

59.    SHAYA MEDICAL was a prospective buyer who, on information and belief, was referred to BALBOA CAPITAL by an unlicensed person within the meaning of section 22603.

60.    BALBOA CAPITAL never provided a written statement to the SHAYA PARTIES regarding the referral made to it by an unlicensed party or parties, in violation of Cal. Fin. Code section 22603.

**Cal. Fin. Code Section 22802(b)**

61.    Cal. Fin. Code section 22802 requires an entity subject to Division 9.5 of the California Financial Code that extends a specific offer of commercial financing to a recipient to disclose to that recipient at the time of extending a specific commercial financing offer to that recipient, and to obtain the recipient's signature on such a disclosure before consummating the commercial financing transaction, inter alia: (1) the total amount of funds provided; (2) the total dollar cost of the financing; (3) a description of pre-payment policies; (4) and the total cost of the financing expressed as an annualized rate.

62.    BALBOA CAPITAL is subject to Division 9.5 of the California Financial Code.

63.    As alleged herein, BALBOA CAPITAL, violated section 22802(b) by failing to disclose, inter alia, (1) the total amount of funds provided; (2) the total dollar

1  cost of the financing; (3) a description of pre-payment policies; (4) and the total cost of

2  the financing expressed as an annualized rate and/or by failing to obtain the SHAYA

3  PARTIES' signatures on any such disclosure.

4  **Cal. Fin. Code Section 22161**

5  64.  Cal. Fin. Code section 22161 forbids entities subject to Division 9 of the

6  California Financial Code from, inter alia, (1) knowingly misrepresenting,

7  circumventing, or concealing, through subterfuge or device, any material aspect or

8  information regarding a transaction to which the lender is a party; (2) committing an

9  act that constitutes fraud or dishonest dealings; and (3) engaging in any act in

10  violation of Section 17200 of the California Business and Professions Code. *See*

11  CAL. FIN. CODE § 22161(a)(5), (6), and (7).

12  65.  BALBOA CAPITAL is subject to Division 9 of the California Financial

13  Code so as to be subject to Cal. Fin. Code section 22161.

14  66.  On information and belief, by and through the conduct set forth in detail

15  in paragraphs 24 through 26, paragraphs 28 through 43, and paragraphs 49 through

16  63, and in light of the allegations in paragraphs 7, 27 and/or 56, above, BALBOA

17  CAPITAL violated Cal. Fin. Code section 22161 by, inter alia, (1) knowingly

18  misrepresenting, circumventing, or concealing, through subterfuge or device, material

19  aspects or information regarding the SHAYA PARTIES' transaction; (2) committing

20  one or more acts that constitute fraud or dishonest dealings; and/or engaging in one or

21  more acts in violation of Section 17200 of the California Business and Professions

22  Code.

23  67.  As a result of BALBOA CAPITAL's unlawful, deceptive, and/or

24  otherwise unfair acts, as specifically alleged above and including, on information and

25  belief, (1) BALBOA's consummation of the loan to SHAYA MEDICAL without

26  obtaining the necessary documentation and performing the required underwriting,

27  which, had it been performed, would have revealed that SHAYA MEDICAL's gross

28  monthly expenses, including the debt service payments on the loan, would exceed

1   SHAYA MEDICAL's monthly gross revenue and which, had BALBOA CAPITAL

2   followed the law, would have resulted in the loan having never been consummated;

3   (2) BALBOA CAPITAL's failure to warn the SHAYA PARTIES pursuant to Section

4   22603 that Kristopher Huston and/or CYNOSURE was being compensated for the

5   referral; and (3) BALBOA CAPITAL's failure to state in the EFA the total amount of

6   funds provided, the total dollar cost of the financing, and the total cost of the

7   financing expressed as an annualized rate, the SHAYA PARTIES purchased a device

8   that is worthless to them and is no longer being used in their practice, executed the

9   EFA and Guaranty, and paid BALBOA approximately $45,000 under a contract that

10  is unconscionable and, therefore, unenforceable.  Had BALBOA CAPITAL complied

11  with the above-referenced laws, which were enacted by the California legislature to

12  prevent exactly what occurred here, the SHAYA PARTIES would not have executed

13  the EFA, the Guaranty, or the CYNOSURE Customer Purchase Agreement and

14  would not have made any payments to BALBOA CAPITAL under an unenforceable

15  contract for a piece of worthless equipment they could not afford and that is no longer

16  being used in their practice.  The SHAYA PARTIES have lost money and suffered

17  actual injury as the result of BALBOA CAPITAL's unlawful, deceptive and/or

18  otherwise unfair acts and, thus, have standing to pursue this claim.

19      68.    As a result of BALBOA CAPITAL's unlawful, deceptive, and/or

20  otherwise unfair acts, as specifically alleged above and including, on information and

21  belief, (1) BALBOA CAPITAL's knowingly misrepresenting, circumventing, or

22  concealing, through subterfuge or device, material aspects or information regarding

23  the SHAYA PARTIES' transaction in violation of Cal. Fin. Code section 22161(6) as

24  more fully alleged, above; and (2) BALBOA CAPITAL's commission of one or more

25  acts that constitute fraud or dishonest dealings as more fully alleged, above, the

26  SHAYA PARTIES were deceived into purchasing a device that is worthless to them

27  and that is no longer being used in their practice, and agreeing to, and in fact making,

28  payments to BALBOA they could not afford under a contract that is unconscionable

1  and, therefore, unenforceable.  Absent these unlawful, deceptive, and/or otherwise

2  unfair acts, the SHAYA PARTIES would not have executed the EFA, the Guaranty,

3  or the CYNOSURE Customer Purchase Agreement and would not have lost the

4  money or suffered the actual injury they have suffered.

5       69.    Because the SHAYA PARTIES have lost money and suffered actual

6  injury, the SHAYA PARTIES are entitled to an order for all available relief,

7  including restitution and injunctive relief, as appropriate.

8                         **SECOND CLAIM FOR RELIEF**

9                               **(Fraud)**

10               (As to BALBOA CAPITAL and CYNOSURE)

11       70.    Paragraphs 1 through 44, above, are realleged and incorporated here by

12  reference, as though fully set forth herein.

13       71.    BALBOA CAPITAL, by and through its agents and/or representatives as

14  alleged in paragraphs 8 and 27, above, misrepresented or concealed material facts to

15  the SHAYA PARTIES when it represented, inter alia, that (1) the SculpSure device

16  would not cause any pain to patients; (2) the SculpSure device would provide

17  satisfactory results, which would lead to referrals from satisfied patients; (3) the

18  marketing campaign that was purchased was effective and would be effective for the

19  SHAYA PARTIES; (4) the machine would "pay for itself," i.e., it would generate

20  sufficient revenue to cover the payments on the machine; and (5) the machine would

21  generate additional, much-needed revenue.  In the alternative, BALBOA CAPITAL

22  is statutorily liable under Section 22602(b) for such misrepresentations of material

23  fact made to the SHAYA PARTIES by Kristopher Huston and/or CYNOSURE, who

24  were, on information and belief, unlicensed but were compensated by BALBOA

25  CAPITAL in connection with their introduction of the SHAYA PARTIES to

26  BALBOA CAPITAL and/or the delivery of the SHAYA PARTIES' contact

27  information to BALBOA CAPITAL.

28

---

72.     CYNOSURE, by and through its agents, employees and/or representatives, including but not limited to its employee, Kristopher Huston, misrepresented or concealed material facts to the SHAYA PARTIES when it represented, inter alia, that (1) the SculpSure device would not cause any pain to patients; (2) the SculpSure device would provide satisfactory results, which would lead to referrals from satisfied patients; (3) the marketing campaign that was purchased was effective and would be effective for the SHAYA PARTIES; (4) the machine would "pay for itself," i.e., it would generate sufficient revenue to cover the payments on the machine; and (5) the machine would generate additional, much-needed revenue.

73.     Additionally, on information and belief, because BALBOA and CYNOSURE are joint venturers as more fully alleged in paragraph 7, above, each of their misrepresentations and concealment of a material fact are imputed to the other, and each joint venturer is liable for the misrepresentations and concealment of the other.

74.     On information and belief, such misrepresentations of material fact, which involved  matters peculiarly within the knowledge of BALBOA CAPITAL and/or CYNOSURE, and each of them, were intended as representations of fact. And, in fact, such representations were accepted by the SHAYA PARTIES as representations of fact because they were peculiarly within the knowledge of BALBOA CAPITAL and/or CYNOSURE, and such reliance was reasonable.

75.     But such representations were false.  The SculpSure device causes significant pain during the course of a treatment and, on information and belief, produces minimal results, thereby leading to unhappy and unsatisfied patients. Therefore, despite the marketing campaign offered by CNYOSURE, the device does not generate the significant revenue needed to cover the cost of financing the device, let alone additional revenue.

76.    On information and belief, by August 2019, COUNTER-DEFENDANTS knew such representations of material fact were false when made or made the representations recklessly and without regard for their truth.

77.    Specifically, COUNTER-DEFENDANTS had received feedback prior to August 2019 that the SculpSure device was not painless as the result of, inter alia, physician complaints and expert testimony in at least one lawsuit regarding the device.

78.    And COUNTER-DEFENDANTS knew the device would not pay for itself because BALBOA CAPITAL had already filed a number of lawsuits against physicians who, it was alleged, had defaulted under Equipment Financing Agreements entered into for the purpose of financing the purchase of SculpSure devices.  The fact that multiple physicians defaulted under identical Equipment Financing Agreements apprised BALBOA CAPITAL and CYNOSURE that such physicians were not realizing significant additional revenue from the SculpSure device and, in fact, that the device was not "paying for itself."

79.    In light of COUNTER-DEFENDANTS' multiple disputes with other physicians and knowledge that multiple physicians had defaulted under identical Equipment Financing Agreements, neither BALBOA CAPITAL nor CYNOSURE believed at the time of their representations to the SHAYA PARTIES that the SculpSure device would generate additional revenue for the SHAYA PARTIES or pay for itself.

80.    BALBOA CAPITAL and CYNOSURE misrepresented or concealed such material facts with an intent to induce reliance by the SHAYA PARTIES.

81.    The SHAYA PARTIES reasonably and justifiably relied on COUNTER-DEFENDANTS' misrepresentations or concealment of material facts.

82.    The SHAYA PARTIES were harmed, and their reliance on COUNTER-DEFENDANTS' representations was a substantial factor in causing such harm.

### THIRD CLAIM FOR RELIEF

**Rescission – Mistake of Fact**

(As to BALBOA CAPITAL)

83.    Paragraphs 1 through 44 and 71 through 81, above, are realleged and incorporated here by reference, as though fully set forth herein.

84.    The SHAYA PARTIES are entitled to rescission of the BALBOA CAPITAL EFA and Guaranty because, as specifically detailed in paragraphs 24 through 43 and 71 through 81, above, their consent was given as the result of a mistake of material fact in that the SHAYA PARTIES were mistaken in believing that (1) the SculpSure device would be well-tolerated by the SHAYA PARTIES' patients and would not impose pain; (2) the accompanying marketing campaign would be effective and result in the referral of multiple patients per month; (3) the machine would "pay for itself," i.e., it would generate sufficient revenue to cover the payments on the machine; and (4) the machine would generate additional, much-needed revenue, all of which were basic assumptions upon which the SHAYA PARTIES executed the EFA.

85.    The SHAYA PARTIES' mistake was not caused by their excessive carelessness, and the SHAYA PARTIES would not have agreed to enter into the contract if they had known about such mistakes.

86.    On information and belief, BALBOA CAPITAL had reason to know, and knew, the SHAYA PARTIES were mistaken regarding these material facts and used that mistake to take advantage of the SHAYA PARTIES and to cause them to sign the EFA and Guaranty and, in fact, BALBOA CAPITAL's fault caused the mistake and, therefore, the EFA and Guaranty are void and unenforceable. Alternatively, the effect of the mistake is such that enforcement of the contracts would be unconscionable.

. . .

. . .

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **FOURTH CLAIM FOR RELIEF**

### **(Rescission – Fraudulent Inducement)**

As to BALBOA CAPITAL

87.     Paragraphs 1 through 44 and 71 through 81, above, are realleged and incorporated here by reference, as though fully set forth herein.

88.     The SHAYA PARTIES are entitled to rescission of the BALBOA CAPITAL EFA and Guaranty because, as specifically detailed in, inter alia, paragraphs 24 through 43 and 71 through 81, their consent was obtained through fraud, duress, and/or undue influence exercised by, or with the connivance of, BALBOA CAPITAL.

## **FIFTH CLAIM FOR RELIEF**

### **Rescission – Mistake of Fact**

(As to CYNOSURE)

89.     Paragraphs 1 through 44 and 71 through 81, above, are realleged and incorporated here by reference, as though fully set forth herein.

90.     The SHAYA PARTIES are entitled to rescission of the CYNOSURE Customer Purchase Agreement because, as specifically detailed in, inter alia, paragraphs 24 through 43 and 71 through 81, above, their consent was given as the result of a mistake of material fact in that the SHAYA PARTIES were mistaken in believing that (1) the SculpSure device would be well-tolerated by the SHAYA PARTIES' patients and impose no pain; (2) the accompanying marketing campaign would be effective and result in the referral of multiple patients per month; (3) the machine would "pay for itself," i.e., it would generate sufficient revenue to cover the payments on the machine; and (4) the machine would generate additional, much-needed revenue, all of which were basic assumptions upon which the SHAYA PARTIES executed the CYNOSURE Customer Purchase Agreement.

91.    The SHAYA PARTIES' mistake was not caused by their excessive carelessness, and the SHAYA PARTIES would not have agreed to enter into the contract if they had known about such mistakes.

92.    CYNOSURE had reason to know, and knew, the SHAYA PARTIES were mistaken regarding these material facts and used that mistake to take advantage of the SHAYA PARTIES and to cause them to sign the CYNOSURE Customer Purchase Agreement and, in fact, CYNOSURE's fault caused the mistake and, therefore, the agreement is void and unenforceable.  Alternatively, the effect of the mistake is such that enforcement of the agreement would be unconscionable.

## SIXTH CLAIM FOR RELIEF

### Rescission – Fraudulent Inducement

### (As to CYNOSURE)

93.    Paragraphs 1 through 44 and 71 through 81, above, are realleged and incorporated here by reference, as though fully set forth herein.

94.    The SHAYA PARTIES are entitled to rescission of the CYNOSURE Customer Purchase Agreement because, as specifically detailed in, inter alia, paragraphs 24 through 43 and 71 through 81, above, their consent was obtained through fraud, duress, and/or undue influence exercised by, or with the connivance of, CYNOSURE.

## SEVENTH CLAIM FOR RELIEF

### Declaratory Relief

### (As to BALBOA CAPITAL)

95.    Paragraphs 1 through 44, above, are realleged and incorporated here by reference, as though fully set forth herein.

96.    An actual controversy has arising and now exists between the SHAYA PARTIES and BALBOA CAPITAL concerning the enforceability of the EFA and Guaranty and, in particularly, the unconscionability of same.

97.     The SHAYA PARTIES assert that the EFA and Guaranty, in whole or in part, are unconscionable in that, inter alia, (1) the EFA and accompanying Guaranty are standardized contracts which are largely illegible due to the extremely small font in which they are printed; (2) the EFA and Guaranty were drafted by BALBOA CAPITAL, a party of superior bargaining strength, and relegates to the weaker, adhering parties, i.e., the SHAYA PARTIES, only the opportunity to adhere to them or reject them and, therefore, they are contracts of adhesion; (3) the terms of the EFA and Guaranty are overly harsh and unduly oppressive and inconsistent with California law in that, inter alia, the EFA states (a) BALBOA CAPITAL may, in its sole discretion, charge up to thirty (30) days of "Prorated Rent" (even though the EFA is not a lease agreement) and such Prorated Rent is not credited against amounts owed as set forth in the payment schedule; (b) "[p]ayments may be adjusted upward or downward by up to 10% to reflect actual costs" but no mention is made of what "costs" would warrant such an adjustment; (c) BALBOA CAPITAL may impose an origination fee and termination fee in unspecified amounts; and (d) BALBOA CAPITAL may impose additional taxes and/or fees, including an invoice fee, the amounts of which are unspecified, and such fees may not only cover BALBOA CAPITAL's costs "but may also include a profit"; (4) while giving BALBOA CAPITAL carte blanche to impose additional charges, taxes and fees without any limitation, the EFA, inter alia, (a) purports to waive all of the Debtor's defenses and counterclaims; and (b) states that, upon default, BALBOA CAPITAL is, inter alia, entitled to attorney's fees "whether or not litigation is commenced" and "any actual or anticipated loss of federal or state tax benefits to Creditor (as determined by Creditor) resulting from Debtor's default"; (5) the EFA and Guaranty do not state the total amount financed or the interest rate being charged; and (6) their terms do not fall within the reasonable expectations of the weaker, adhering parties, i.e., the SHAYA PARTIES, and to enforce the EFA and Guaranty or certain of their terms would work on the SHAYA parties an overly harsh and unduly oppressive result.

98.     On information and belief, it is BALBOA CAPITAL's position that the EFA and Guaranty are not unconscionable in whole or in part and are enforceable.

99.     The SHAYA PARTIES seek a declaration that the EFA and Guaranty are unconscionable in whole or in part and, to that extent, they are unenforceable.

100.    A declaratory judgment is necessary to resolve the controversy between the SHAYA PARTIES and BALBOA CAPITAL regarding the unconscionability of the EFA and Guaranty.

101.    The requested relief will resolve the controversy between the parties.

## JURY TRIAL DEMAND

102.    The SHAYA PARTIES demand trial by jury on all triable issues.

## PRAYER

WHEREFORE, counter-claimants demand judgment against Balboa Capital Corporation as follows:

1.      For general, compensatory, and consequential damages according to proof;

2.      For restitution;

3.      For rescission;

4.      For declaratory relief in the form of a declaration that the subject Equipment Finance Agreement and Guaranty at issue in the Complaint and Counterclaim are unconscionable and, therefore, unenforceable;

5.      For an injunction permanently enjoining BALBOA CAPITAL from enforcing the subject Equipment Finance Agreement at issue in the Complaint and Counterclaim due to its unconscionability;

6.      For reasonable attorney fees pursuant to Cal. Civil Code § 1717(a);

7.      For interest at the highest legal rate commencing from the earliest date allowed by law;

8.      For costs of suit; and

1        9.     For such other and further relief as the Court deems just and proper,

2  together with costs and disbursements of this action.

3

4  Dated:      June 21, 2021         Respectfully submitted,

                                          FRANKLIN | SOTO LLP

5

6                                    <u>/s/ Cheryl Dunn Soto</u>

7                                    Joshua D. Franklin

8                                    Cheryl Dunn Soto

                                    *Attorneys for Defendants and*

9                                    *Counterclaimants*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28